## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SONIA ORTIZ, | ) |
| Plaintiff, | ) CIVIL ACTION NO.: _____ |
| v. | ) |
| PRIORITY HEALTHCARE GROUP LLC, d/b/a THE GARDENS AT PALMYRA, | ) |
| Defendant. | ) JURY TRIAL DEMANDED |
|  | ) *ELECTRONICALLY FILED* |

## COMPLAINT

Plaintiff, Sonia Ortiz, by and through her attorneys, McCarthy Weisberg Cummings, P.C., brings this civil action for damages against the above-named Defendant, Priority Healthcare Group LLC, d/b/a The Gardens at Palmyra, demands a trial by jury, and complains and alleges as follows:

### I.  PARTIES

**A.  Plaintiff**

1. Plaintiff, Sonia Ortiz (hereinafter referred to as "Plaintiff"), is an adult individual residing at 530 North Railroad Street, Palmyra, Lebanon County, Pennsylvania.

B.     **Defendant**

2.     Defendant, Priority Healthcare Group LLC, d/b/a The Gardens at Palmyra (hereinafter referred to as "Defendant"), is a Delaware corporation and a provider of home health nursing, rehabilitation, and personal care services, headquartered at 99 West Hawthorne Avenue, Suite 508, Valley Stream, Nassau County, New York.

3.     At all times relevant and material hereto, Defendant owned and operated The Gardens at Palmyra (hereinafter referred to as "the Gardens") located at 341 North Railroad Street, Palmyra, Lebanon County, Pennsylvania.

## II.     JURISDICTION AND VENUE

4.     The jurisdiction of the District Court is conferred by 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## III.     STATEMENT OF FACTS

6.     At the time of the incidents described in this Complaint, Plaintiff was employed by Defendant as a Cook at the Gardens.

7. When Plaintiff began her employment, multiple health violations were apparent in the Gardens' kitchen, and Plaintiff immediately began working to correct the same.

8. Plaintiff duly notified her supervisor, Edward Harding, Defendant's Administrator at the Gardens, of these violations; however, Plaintiff's complaints were ignored and the underlying issues were left uncorrected.

9. On or about March 22, 2018, Plaintiff notified Ilan Richland, Defendant's Regional Director of Operations, of her concerns about Defendant's non-compliance with Pennsylvania's healthcare regulations, specifically:

   a. that freezer temperatures had been deceptively backfilled;
   b. that the kitchen was not being cleaned, with pots and drip trays left in unsanitary condition;
   c. that undated food was being kept in the refrigerator;
   d. that delivered foods had been left outside for at least nine (9) hours before being properly stored in the freezer;
   e. that the freezer was not being kept clean;
   f. that the food storage area was not being kept clean:
   g. that the freezer log was not being used;

      h. that the night snack cart was not being utilized properly, with residents being given marshmallows in place of an appropriate snack; and

      i. that temperatures were being fabricated in the log books.

10. Plaintiff notified Mr. Richland that each of these concerns had been raised to Mr. Harding and that no corrective action had been taken.

11. Plaintiff continued to complain of the non-compliance with Pennsylvania's healthcare regulations to Mr. Harding, Mr. Richland, and to Defendant's Dietician, Steffanie (last name unknown), throughout her tenure with Defendant.

12. Sometime in mid-April 2018, the Gardens ran out of sanitizer for the dishwasher. Plaintiff duly notified Mr. Harding that she would not be able properly sanitize the dishes and would have to serve dinner on paper plates.

13. Plaintiff frequently notified Mr. Harding, Steffanie, and Mr. Richland that temperatures were being forged on freezer, the dishwasher, and the sanitizer logs.

14. Plaintiff's complaints were repeatedly ignored and no corrective action was ever taken.

15. On or about April 17, 2018, Plaintiff contacted the Pennsylvania Department of Health and Human Services ("DHHS") and lodged a complaint of the above health violations occurring at the Gardens.

16. On or about April 24, 2018, DHHS performed an on-site investigation and concluded that the Gardens was not in compliance with the Requirements for Long Term Care Facilities, 42 C.F.R. 483, Subpart B, and the Pennsylvania Long Term Care Licensure Regulations, 28 PA Code, Part IV, Subpart C.

17. Specifically, DHHS determined that the Gardens failed to maintain sanitary conditions and store food properly in the kitchen.

18. On or about April 24, 2018, after DHHS had completed its on-site investigation, Mr. Harding entered the kitchen and told Plaintiff that he knew that she was responsible for the complaint to DHHS because she had "given too much detail" and that DHHS was responding to the same complaints that she had been reporting to Mr. Harding and Mr. Richland.

19. On or about April 25, 2018, Mr. Harding gave Plaintiff a written warning for failing to complete her Cook Tour Sheet by the end of her shift.

20. Plaintiff did not initial her Cook Tour Sheet because she believed that it contained inaccurate, potentially falsified information, and she duly notified Mr. Harding of the same; furthermore, Plaintiff had not yet been trained on the proper completion of the Cook Tour Sheet.

21. Upon receiving the written warning, Plaintiff notified Mr. Richland of the written warning and the reason why she had not completed the Cook Tour Sheet.

22. The written warning was clearly a pretext because on or about April 1, 2018, Plaintiff notified Mr. Harding of the previous cook's falsification of his Cook Tour Sheet, yet that cook was not disciplined.

23. Additionally, upon information and belief, on or about April 28 and again on April 29, 2018, another cook employed by Defendant failed to fill out his Cook Tour Sheets, yet this cook was neither disciplined nor given a written warning. Instead, the cook was instructed to complete the sheets later, during his next shift.

24. Furthermore, Plaintiff was not trained as to how to properly complete the Cook Tour Sheet until April 29, 2018.

25. Upon information and belief, according to Defendant's employee handbook and policies, the failure to properly complete the Cook Tour Sheet should have resulted in a verbal warning.

26. Plaintiff further notified Mr. Richland that she believed Mr. Harding was targeting her in retaliation for the complaint to DHHS.

27. On or about April 29, 2018, Mr. Harding called Plaintiff into his office and repeatedly told her that he knew that she had called DHHS.

28. Mr. Harding repeatedly threatened Plaintiff that her continued complaints could result in the Gardens being shut down and everyone losing their jobs.

29. On or about April 30, 2018, Mr. Harding terminated Ms. Ortiz, informing her that "it wasn't working out."

30. Plaintiff believes and therefore avers that Defendant terminated her in retaliation for the complaints she had made to Defendant, the complaint she filed with the Pennsylvania Department of Health and Human Services, and for her unwillingness to violate Pennsylvania law.

## COUNT I

### VIOLATION OF PENNSYLVANIA WHISTLEBLOWER LAW
### Retaliation and Wrongful Termination

31. All prior paragraphs are incorporated herein as if set forth fully below.

32. Defendant is a recipient of Medicare and Medicaid and potentially other sources of public funding for the provision of medical services and is a Public Body as that term is defined pursuant to the Pennsylvania Whistleblower Law ("Whistleblower Law"), 43 Pa. Stat. Ann. § 1421 *et seq.*, in that Defendant is funded in any amount by or through Commonwealth or political subdivision authority.

33. Defendant was the employer of Plaintiff and is subject to the provisions of the Whistleblower Law.

7

34. The Whistleblower Law states the following in relevant part:

§ 1423. Protection of employees

(a) Persons not to be discharged. - No employers may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally, or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 Pa. Stat. Ann. § 1422.

§ 1425. Enforcement

A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies, A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate.

43 Pa. Stat. Ann. § 1425.

35. Plaintiff made good faith reports to multiple representatives of Defendant to whom it was appropriate and reasonable to make such reports, and at all times understood and was advised that the information of serious wrongdoing by Defendant, including violations of the law, rules, and regulations governing the Defendant, was taking place at the Gardens.

36. Additionally, Plaintiff made a good faith report to DHHS of serious wrongdoing by Defendant, including violations of the law, rules, and regulations governing the Defendant, at the Gardens.

37. All of the reports by Plaintiff were made in good faith and without malice or personal benefit.

38. Defendant violated Plaintiff's rights under the Whistleblower Law by terminating Plaintiff in retaliation for making a good faith complaint of a wrongdoing.

39. As a result of Plaintiff's termination, she has suffered emotional harm, embarrassment, humiliation, mental anguish, and loss of self-esteem, as well as economic loss and damage to her reputation.

**WHEREFORE**, Plaintiff Sonia Ortiz seeks the damages set forth in the *Ad Damnum* clause of the instant Complaint, infra.

## COUNT II

### VIOLATION OF PENNSYLVANIA PUBLIC POLICY
### Retaliation and Wrongful Termination

40. All prior paragraphs are incorporated herein as if set forth fully below.

41. In the alternative to Plaintiff's Count of Retaliation and Wrongful Termination under the Pennsylvania Whistleblower Law, Plaintiff brings the following claim of Retaliation and Wrongful Termination in violation of Pennsylvania Public Policy.

42. It is a public policy of the Commonwealth of Pennsylvania in the protection of public health, safety, and welfare to ensure that patients do not receive inadequate levels of care by untrained and/or unqualified individuals such as that complained of by Plaintiff.

43. Plaintiff was unlawfully discharged by Defendant because she complained of violations of Pennsylvania law as stated above.

44. "[A] discharge may violate a 'clear mandate of public policy' if it results from conduct on the part of the employee that is required by law or from the employee's refusal to engage in conduct prohibited by law. 'The public policy exception has been most frequently applied under Pennsylvania law when the discharge is a result of the employee's compliance with or refusal to violate the law.'" *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1344 (3d Cir. 1990).

45. Defendant's discharge of Plaintiff for her refusal to engage in conduct prohibited by law and required under the law offends clear mandates of public policy in the Commonwealth of Pennsylvania and supports a tort claim for wrongful discharge. *Herskowitz v. Cty. of Lebanon*, No. 1:13-CV-00431, 2013 WL 5719250, at *8 (M.D. Pa. Oct. 21, 2013).

46. The typical case involving wrongful discharge in violation of public policy is one where the "employee's termination is retaliatory and not grounded on

a legitimate reason." *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006).

47. As a licensed health care provider, Defendant is aware of its responsibility to the public that its Pennsylvania facilities, including the Gardens, operate in compliance with Pennsylvania healthcare regulations, and therefore Defendant's termination of Plaintiff in retaliation for refusing to violate these regulations constitutes a reckless disregard for the public welfare and the patients in its care.

48. As a result of Plaintiff's termination, she has suffered emotional harm, embarrassment, humiliation, mental anguish and loss of self-esteem, as well as economic loss and damage to her reputation.

**WHEREFORE**, Plaintiff Sonia Ortiz seeks the damages set forth in the *Ad Damnum* clause of the instant Complaint, infra.

### *AD DAMNUM* CLAUSE/PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Sonia Ortiz, respectfully prays that this Honorable Court enter judgment against Defendant, Priority Healthcare Group LLC, d/b/a The Gardens at Palmyra, for the following relief;

    a. Loss of wages and benefits;

    b. The value of future lost wages and benefits;

    c. Damages pursuant to 43 PS § 1428;

d. Damage to her reputation;

e. Other actual damages sustained by Plaintiff as a result of the wrongful conduct of Defendant;

f. Compensatory damages;

g. Damages for emotional pain, suffering, inconvenience as appropriate;

h. Injunctive and prospective relief;

i. Punitive damages as appropriate;

j. Interest on all of the above;

k. Attorney fees and expenses as appropriate;

l. Costs of suit; and

m. Such further and additional relief as this court deems just and proper.

## **DEMAND FOR JURY**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff, Sonia Ortiz, respectfully demands a trial by jury.

                        Respectfully submitted,

                        McCarthy Weisberg Cummings, P.C.

August 27, 2018           /s/ Derrek W. Cummings
Date                           Derrek W. Cummings, Esquire
                                  PA Bar No. 83286
                                  dcummings@mwcfirm.com

                                  Steve T. Mahan, Esquire
                                  PA Bar No. 313550
                                  smahan@mwcfirm.com

                                  Larry A. Weisberg, Esquire
                                  PA Bar No. 83410
                                  lweisberg@mwcfirm.com

                                  Stephen P. Gunther, Esquire
                                  PA Bar No. 324203
                                  sgunther@mwcfirm.com

                                  2704 Commerce Drive, Suite B
                                  Harrisburg, PA 17110-9380
                                  (717) 238-5707
                                  (717) 233-8133 (FAX)

                                  *Counsel for Plaintiff*