# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| SONIA ORTIZ, | : | |
|---|---|---|
| Plaintiff | : | No. 1:18-cv-01696 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| PRIORITY HEALTHCARE | : | |
| GROUP LLC d/b/a THE GARDENS | : | |
| AT PALMYRA, | : | |
| Defendant | : | |

## MEMORANDUM

Before the Court are Defendant Priority Healthcare Group LLC ("Defendant")'s motion to dismiss Plaintiff Sonia Ortiz ("Plaintiff")'s complaint (Doc. No. 8) and motion to dismiss Plaintiff's amended complaint (Doc. No. 12). For the reasons stated below, the Court will deny Defendant's motion to dismiss Plaintiff's complaint (Doc. No. 8) as moot and grant in part and deny in part Defendant's motion to dismiss Plaintiff's amended complaint (Doc. No. 12).

## I. BACKGROUND

### A. Procedural Background

Plaintiff initiated the above-captioned action by filing a two-count complaint on August 27, 2018, asserting claims of (1) retaliation and wrongful termination in violation of the Pennsylvania Whistleblower Law ("PWL") and (2) retaliation and wrongful termination in violation of Pennsylvania public policy against Defendant. (Doc. No. 1.) Defendant filed a motion to dismiss the initial complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 8) on October 30, 2018 and a brief in support thereof (Doc. No. 9) on November 1, 2018. On November 8, 2018, Plaintiff filed a two-count amended complaint, asserting claims of (1) retaliation and wrongful

termination in violation of the PWL and (2) wrongful termination in violation of Pennsylvania public policy. (Doc. No. 10.) Defendant filed a motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) (Doc. No. 12) on November 19, 2018 and a brief in support thereof (Doc. No. 13) on November 28, 2018. On December 4, 2018, Plaintiff filed a brief in opposition to Defendant's motion to dismiss Plaintiff's amended complaint. (Doc. No. 15.) Because the time for further briefing has passed, both motions are ripe for disposition.

### B. Factual Background[1]

The allegations in the amended complaint relate to Plaintiff's allegedly wrongful and retaliatory termination of employment by Defendant in late April of 2018. (Doc. No. 10.) Plaintiff was employed as a cook at the Gardens at Palmyra ("the Gardens"), a nursing home owned by Defendant and located in Palmyra, Pennsylvania. (Id. ¶ 2, 6.) Defendant allegedly receives Medicare and Medicaid funds for providing medical services. (Id. ¶ 58.) From the beginning of her employment at the Gardens, Plaintiff allegedly noticed multiple Pennsylvania health regulation violations in the kitchen and attempted to remedy said violations. (Id. ¶ 7.) Among Plaintiff's alleged observations were the following: employees' failure to clean the kitchen, including leaving pans and drip trays in an unsanitary condition; the existence of undated food in the refrigerator; delivered foods being left outside for at least nine hours before being placed in the freezer; employees' failure to keep the freezer clean; employees' failure to keep the food storage area clean; and the refreezing of food that had thawed in a defective freezer.[2] (Id. ¶ 7.) She contends that, as a result of the health regulation violations, Plaintiff and

---

[1] Unless otherwise noted, the following background information is derived from the allegations set forth in Plaintiff's amended complaint. (Doc. No. 10.)

[2] Plaintiff purports that these alleged conditions violated the following Pennsylvania health regulations, respectively: Food Code ¶¶ 4-601.11 et seq. and 4-701.10 et seq.; Food Code ¶

the Gardens' dietician regularly had to dispose of improperly-stored food. (Id. ¶ 11.) In March of 2018, Plaintiff alleges that the food stored in a known-to-be-defective freezer had to be discarded because it spoiled when the freezer entered "defrost mode" and thawed its contents. (Id. ¶¶ 12-14.) Plaintiff also alleges that Defendant regularly wasted food items prior to site visits by Pennsylvania Department of Health and Human Services ("DHHS") officials. (Id. ¶ 15.) Specifically, Plaintiff alleges that upon the arrival of DHHS officials at the Gardens, the receptionist would call the kitchen to warn the kitchen employees of the impending inspection, at which point the kitchen employees were required to examine all food storage areas and discard any food products that were questionably labeled or stored, even if they were not spoiled. (Id. ¶ 16-17.) Plaintiff asserts that one such occurrence in April of 2018 resulted in two thirty-gallon garbage bags of food products being discarded. (Id. ¶ 18.) Plaintiff further contends that employees failed to use the freezer log to track food freshness properly, and paperwork was fraudulently completed to indicate food freshness and proper storage temperatures. (Id. ¶¶ 16-17.) Plaintiff also alleges that her supervisor, Edward Harding ("Mr. Harding"), instructed her on multiple occasions to prepare and serve spoiled food, which Plaintiff refused to do. (Id. ¶¶ 23, 27.) She contends that residents at the Garden were regularly served food that was prepared in ways that failed to comply with professional standards of food service safety and were served marshmallows in place of appropriate snacks. (Id. ¶¶ 28, 29.) Plaintiff further alleges that the Gardens ran out of sanitizer for the dishwasher in mid-April of 2018. (Id. ¶ 33.)

Plaintiff alleges that she notified Mr. Harding of the health regulation violations at the beginning of her employment, but the violations remained unresolved. (Id. ¶ 8.) She alleges that

---

3.701.11; Food Code ¶ 3-202.11; Food Code ¶ 3-305.11; Food Code ¶ 3-305.1; and Food Code ¶¶ 3-501.11, 3-501.12, and 3-501.13.

on March 22, 2018, she reported her concerns regarding the health regulation violations to Defendant's regional director of operations, Ilan Richland ("Mr. Richland"), detailing the specific regulations being violated by the unsanitary condition of the kitchen, food storage areas, and freezer, as well as the failure to place delivered food in the freezer promptly. (Id. ¶ 9.) Plaintiff later allegedly notified Mr. Richland of other health regulation violations, including the regular fabrication of records regarding food, freezer, and refrigerator temperature and the spoiling of food products, and noted that these violations posed a serious health risk to the Gardens' residents. (Id. ¶¶ 21, 22.) Plaintiff alleges that she also informed Mr. Richland that she had already reported the health regulation violations to Mr. Harding, but no corrective action had been taken, and she would not follow procedures and policies that violated state law and put residents at risk. (Id. ¶¶ 30, 31.) Plaintiff contends that she regularly complained of Defendant's non-compliance with health regulations to Mr. Harding, Mr. Richland, and the Gardens' dietician throughout the time she was employed at the Gardens, but her complaints were ignored, and corrective action was not taken. (Id. ¶¶ 32, 35.)

In mid-April of 2018, Plaintiff allegedly contacted the DHHS and reported the health regulation violations occurring at the Gardens, as well as Defendant's practice of warning the kitchen employees when DHHS officials arrived so that they could dispose of improperly stored or labeled food products. (Id. ¶¶ 36, 37.) Plaintiff asserts that on April 24, 2018, DHHS officials conducted an inspection of the Gardens, which resulted in a determination that the Gardens failed to maintain sanitary conditions and store food properly in its kitchen and was in violation of various state health regulations. (Id. ¶¶ 38, 39.) Plaintiff alleges that as a result of the investigation, Defendant had to dispose of a multitude of improperly stored or labeled food products. (Id. ¶ 40.) Shortly after the DHHS officials completed their inspection, Mr. Harding

4

informed Plaintiff that he knew she had lodged the complaint against the Gardens due to the level of detail of the complaint and similarity between the details of the complaint and the issues previously raised by Plaintiff. (Id. ¶ 41.)

Plaintiff alleges that the day after the DHHS inspection, Mr. Harding gave Plaintiff a written warning for her failure to complete her "Cook Tour Sheet" by the end of her shift.[3] (Id. ¶ 43.) Plaintiff contends that she did not initial the Cook Tour Sheet because it contained inaccurate and falsified temperature information and that she informed Mr. Harding of her reasoning. She asserts that she confronted the employee who falsified the information in the presence of Mr. Harding, but no corrective action was taken, and Mr. Harding instructed Plaintiff to sign the Cook Tour Sheet. (Id. ¶¶ 44, 45.) Plaintiff alleges that when she refused to do so, Mr. Harding threatened to discipline her for insubordination. (Id. ¶ 45.) Plaintiff further alleges that upon receipt of the written warning, she contacted Mr. Richland and notified him of the warning and why she had not signed the Cook Tour Sheet. (Id. ¶ 46.) She purportedly also told Mr. Richland that she believed Mr. Harding was targeting her in retaliation for Plaintiff contacting DHHS. (Id. ¶ 51.) Plaintiff alleges that Mr. Harding summoned her to his office on April 29, 2018, where he repeatedly told her that he knew she had called DHHS and that her continued complaints could cause the Gardens to shut down and its employees to lose their jobs. (Id. ¶¶ 52, 53.) Plaintiff asserts that Mr. Harding terminated her employment on April 30, 2018, at which time he told her that "it wasn't working out." (Id. ¶ 54.)

## II. LEGAL STANDARD

---

[3] Plaintiff asserts that pursuant to Defendant's employee handbook and policies, failure to complete the Cook Tour Sheet should have resulted in a verbal, rather than written, warning. (Doc. No. 10 at ¶ 50.) Plaintiff further asserts that other employees who failed to complete their Cook Tour Sheets properly, both before and after Plaintiff received a written warning, did not receive a written warning or face any other disciplinary action. (Id. ¶¶ 47, 48.)

5

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although the Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. See id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district

6

court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation marks omitted) (quoting Iqbal, 556 U.S. at 675, 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III. DISCUSSION

### A. Plaintiff's Claim of Retaliation and Wrongful Termination in Violation of the Pennsylvania Whistleblower Law

#### 1. Applicable Legal Standard

The PWL holds, in pertinent part, that:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an

7

> instance of wrongdoing or waste by a public body or an instance of
> waste by any other employer as defined in this act.

See 43 P.S. § 1423(a).

The PWL defines "waste" as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." See 43 P.S. § 1422. Under the PWL, a "public body" is defined as "[a]ll of the following":

> (1) A State officer, agency, department, division, bureau, board,
> commission, council, authority or other body in the executive
> branch of State government.
>
> (1.1) The General Assembly and its agencies.
>
> (2) A county, city, township, regional governing body, council,
> school district, special district or municipal corporation, or a board,
> department, commission, council or agency.
>
> (3) Any other body which is created by Commonwealth or political
> subdivision authority or which is funded in any amount by or
> through Commonwealth or political subdivision authority or a
> member or employee of that body.

See id. at § 1422. This Court and other district courts in the Third Circuit have previously held that the receipt of Medicare and Medicaid reimbursements is insufficient to deem a private entity a "public body" under the PWL. See, e.g., Grim v. May Grant Assocs., No. 18-cv-2231, 2019 WL 358520, at *5 (E.D. Pa. Jan. 29, 2019) ("Thus, as Plaintiff has alleged only that Defendants are the 'recipients of Medicare and/or Medicaid and potentially other sources of public funding for the provision of medical services,' Plaintiff has not pled sufficient facts to show that Defendants are 'funded by or through Commonwealth or political subdivision authority.' Thus, Plaintiff has failed to state that Defendants are a 'public body' under the PWL." (internal

citations omitted)); Eaves-Voyles v. Almost Family, Inc., 198 F. Supp. 3d 403, 409 (M.D. Pa. 2016).

### 2. Parties' Arguments

Defendant argues that Plaintiff has failed to state a claim for a violation of the PWL because Plaintiff has failed to allege facts that establish that Defendant is a public body under the PWL, which Defendant alleges is an element of such a claim. (Doc. No. 13 at 6-9.) In response, Plaintiff states that Defendant's argument is premised on an out-of-date version of the PWL. (Doc. No. 15 at 12.) Plaintiff argues that the current version of the PWL, effective September 2, 2014, applies to an employee who reports instances of waste by his or her employer, regardless of whether the employer is a public body. (Id. at 10-12.) Plaintiff contends that because her complaint alleges that she reported instances of waste with respect to Defendant, she has sufficiently alleged a PWL claim. (Id. at 12.)

### 3. Whether Plaintiff has Sufficiently Stated a Claim of Retaliation and Wrongful Termination in Violation of the PWL Against Defendant

Pursuant to the PWL, in order for a claimant to invoke the law's protection as to wrongful termination or retaliation based on the claimant reporting wrongdoing, the reported wrongdoing must have been carried out by a public body. See 43 P.S. § 1423(a). The Court concludes, and Plaintiff appears to concede, that Defendant is not a public body as defined by the PWL. In regard to Defendant's public funding status, Plaintiff's amended complaint alleges only that "Defendant is a recipient of Medicare and Medicaid and potentially other sources of public funding for the provision of medical services." (Doc. No. 10 at ¶ 58.) This Court and other district courts in the Third Circuit have previously held that entities in such circumstances are not public bodies as defined by the PWL. See, e.g., Grim, 2019 WL 358520, at *5; Eaves-Voyles, 198 F. Supp. 3d at 409. Thus, Plaintiff has failed to allege sufficiently that Defendant is a public

9

body and, therefore, has failed to state a retaliation and wrongful termination claim based on a violation of the PWL in regard to Plaintiff reporting wrongdoing by Defendant.

As to a PWL claim based on reporting waste, although Plaintiff's amended complaint refers to Plaintiff reporting instances of Defendant wasting food, the Court concludes that Plaintiff's amended complaint fails to allege facts from which a reasonable jury could conclude that Plaintiff reported waste as defined by the PWL. Plaintiff alleges that she reported that Defendant wasted food products as a general practice and on several specific occasions. (Doc. No. 12 at 9-19, 36, 37.) However, pursuant to the PWL, "waste" is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." See 43 P.S. § 1422. Plaintiff's amended complaint alleges no facts from which a jury could plausibly conclude that the alleged instances in which food was wasted by Defendant resulted in the misuse or abuse of Medicare, Medicaid, or other state funds or the destruction or loss of food products that "belong[ed] to or [were] derived from" such funds. Thus, Plaintiff has failed to allege that she reported waste—as defined by the PWL—on the part of Defendant, and, therefore, has failed to state a claim of wrongful termination and retaliation in violation of the PWL. See Grim, 2019 WL 358520, at *5 (concluding that a plaintiff failed to state a wrongful termination PWL claim based on reporting her employer's waste because she failed to plead sufficiently that such waste "resulted in a substantial abuse or misuse of Medicare and/or Medicaid funds"). Accordingly, the Court will grant Defendant's motion to dismiss as to Count I of Plaintiff's amended complaint.

    **B.**    **Plaintiff's Claim of Wrongful Termination in Violation of Pennsylvania Public Policy**

        **1.**    **Applicable Legal Standard**

Under Pennsylvania Law, a plaintiff may assert a claim for wrongful termination of at-will employment based on a violation of Pennsylvania public policy only where the termination "would threaten clear mandates of public policy." See LaRochelle v. Wilmac Corp., 210 F. Supp. 3d 658, 712 (E.D. Pa. 2016) (internal quotation marks omitted) (quoting Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918 (Pa. 1989)). Although the determination of what qualifies as a violation of a clearly mandated public policy is left for courts to determine on a case-by-case basis, see Dugan v. Bell Telephone of Pennsylvania, 876 F. Supp. 713, 725 (W.D. Pa. 1994) (citing Turner v. Letterkenny Federal Credit Union, 505 A.2d 259, 261 (Pa. Super. Ct. 1985)), the Third Circuit has held that "an employee's discharge will offend clear mandates of public policy if the discharge results from conduct of the employee that is required by law, or from the employee's refusal to engage in conduct prohibited by law." See Herskowitz v. Cty. of Lebanon, No. 13-cv-431, 2013 WL 5719250, at *8 (M.D. Pa. Oct. 21, 2013) (citing Clark v. Modern Grp. Ltd., 9 F.3d 321, 330-32 (3d Cir. 1993); Smith v. Calgon Carbon Corp., 917 F.2d 1338, 1344 (3d Cir. 1990); Woodson v. AMF Leisureland Ctrs., Inc., 842 F.2d 699, 701-02 (3d Cir. 1988)).

Additionally, "Pennsylvania law does not recognize a common law cause of action for violating public policy when there is an existing statutory remedy." See Palazzolo v. Damsker, No. 10-cv-7430, 2011 WL 2601536, at *7 (E.D. Pa. June 30, 2011) (citing Preobrazhenskaya v. Mercy Hall Infirmary, 71 F. App'x 936 (3d Cir. 2003); Wolk v. Saks Fifth Avenue, Inc., 782 F.2d 223, 224 n.3 (3d Cir. 1984); Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910, 918-19 (3d Cir. 1982); Jacques v. AKZO Int'l Salt, Inc., 619 A.2d 748, 753 (Pa. Super. Ct. 1993)). The existence of the statutory remedy, rather than the claimant's successful application of it, determines whether preemption applies. See id. (citing DeMuro v. Phila. Hous. Auth., No. 98-

cv-3137, 1998 WL 96103 (E.D. Pa. Dec. 21, 1998)). The purpose of this limitation is to prevent a claimant from circumventing the specific procedures defined in the pertinent statute. See Scholly v. JMK Plastering, Inc., No. 07-cv-4998, 2008 WL 2579729, at *5 (E.D. Pa. June 25, 2008) (quoting Bruffett, 692 F.2d at 919).

### 2. Parties' Arguments

Defendant argues that Plaintiff has failed to state a claim for wrongful termination in violation of Pennsylvania public policy because Plaintiff's claim is preempted by the whistleblower protection provisions of the FDA Food Safety Modernization Act ("FSMA"), which are enforced by the Occupational Safety and Health Administration ("OSHA"). (Doc. No. 13 at 9-11.) Defendant contends that under Pennsylvania law, a violation of public policy claim is not recognized when such a statutory remedy exists. (Id. at 9-10.) Plaintiff argues that the asserted statutory remedy does not preclude her claim for two reasons. (Doc. No. 15 at 13-15.) First, she argues that Defendant does not qualify as an "entity engaged in the manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food" under 21 U.S.C. § 399d(a). (Id. at 13-14.) Second, she argues that the FSMA protections do not apply to her because she has not alleged that she reported violations of the FSMA. (Id. at 15.)

### 3. Whether Plaintiff Has Sufficiently Stated a Claim of Wrongful Termination in Violation of Pennsylvania Public Policy

Plaintiff alleges that Defendant wrongfully terminated her due to her failure to engage in conduct prohibited by Pennsylvania health regulations. (Doc. No. 10 at ¶ 55.) Such an allegation satisfies the "violation of clear mandates of public policy" standard required to allege a claim of wrongful termination in violation of Pennsylvania public policy. See Herskowitz, 2013 WL 5719250, at *8 (citing Clark, 9 F.3d at 330-32; Smith, 917 F.2d at 1344; Woodson,

842 F.2d at 701-02). Turning to the allegedly preemptive statutory remedy cited by Defendant, the Court observes that 21 U.S.C. § 399d provides the following employee protections:

> (a) In general. No entity engaged in the manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee, whether at the employee's initiative or in the ordinary course of the employee's duties (or any person acting pursuant to a request of the employee) —
>
> > (1) provided, caused to be provided, or is about to provide or cause to be provided to the employer, the Federal Government, or the attorney general of a State information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of any provision of this Act [21 USCS §§ 301 et seq.] or any order, rule, regulation, standard, or ban under this Act [21 USCS §§ 301 et seq.], or any order, rule, regulation, standard, or ban under this Act [21 USCS §§ 301 et seq.];
> >
> > (2) testified or is about to testify in a proceeding concerning such violation;
> >
> > (3) assisted or participated or is about to assist or participate in such a proceeding; or
> >
> > (4) objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this Act [21 USCS §§ 301 et seq.], or any order, rule, regulation, standard, or ban under this Act [21 USCS §§ 301 et seq.].

See 21 USCS § 399d. Therefore, in the context of an employee reporting information to officials or an employee objecting to or refusing to take an employer-directed action, the FSMA protections apply only when an employee reports that his or her employer violated the Federal Food, Drug, and Cosmetic Act ("FFDCA") or a derivative rule or regulation or the employee objects to or refuses to participate in an action that the employee believes to be in violation of the

13

FFDCA or a derivative rule or regulation. See id. Plaintiff alleges that she reported specific violations of Pennsylvania health regulations by Defendant to the DHHS and that she objected to and refused to take part in actions that she believed were in violation of Pennsylvania health regulations. (Doc. No. 10 at 9-19, 23, 27, 30, 36, 37, 43, 45.) None of the allegations in Plaintiff's amended complaint indicate that she reported violations of the FFDCA or its derivative rules and regulations to the DHHS or any other entity, nor do any allegations in Plaintiff's amended complaint indicate that she objected to or refused to take part in an action that she believed violated the FFDCA or a derivative rule or regulation. Thus, the protections afforded by 21 U.S.C. § 399d do not apply to Plaintiff under the circumstances alleged in the amended complaint and, therefore, do not preempt her claim.[4] Accordingly, the Court concludes that Plaintiff has sufficiently alleged a claim of wrongful termination in violation of Pennsylvania public policy and will deny Defendant's motion to dismiss as to Count II of Plaintiff's amended complaint.

## IV. CONCLUSION

Based upon the foregoing, the Court will deny Defendant's motion to dismiss Plaintiff's complaint (Doc. No. 8) as moot and will grant in part and deny in part Defendant's motion to dismiss Plaintiff's amended complaint (Doc. No. 12). Plaintiff will be granted thirty (30) days within which she may file a second amended complaint that corrects the pleading deficiencies of

---

[4] Because the Court has determined that Plaintiff's claim is not preempted by the whistleblower protections of the FSMA on this basis, it declines to address whether Defendant qualifies as an "entity engaged in the manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food" under 21 U.S.C. § 399d.

Count I of her amended complaint identified herein.[5] An Order consistent with this Memorandum follows.

---

[5] Although Plaintiff has not requested leave to amend her amended complaint, and "sua sponte leave is not required in non-civil rights cases in this Circuit," Clarke v. Liberty Mutual Insurance Company, No. 18-cv-1925, 2018 WL 6497895, at *5 (M.D. Pa. Dec. 10, 2018) (citing Fletcher-Harlee Corporation v. Pote Concrete Contractors, Inc., 482 F.3d 247, 253 (3d Cir. 2007)), because amendment of the amended complaint as to Count I is not clearly futile, Plaintiff will be granted leave to file a second amended complaint, in accordance with Federal Rule of Civil Procedure 15(a)(2).