# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONIA ORTIZ,<br><br>    Plaintiff,<br><br>v.<br><br>PRIORITY HEALTHCARE GROUP LLC, d/b/a THE GARDENS AT PALMYRA,<br><br>    Defendant. | CIVIL ACTION NO.: 1:18-cv-01696-YK<br><br><br><br>JURY TRIAL DEMANDED<br><br>*ELECTRONICALLY FILED* |

## SECOND AMENDED COMPLAINT

Plaintiff, Sonia Ortiz, by and through her attorneys, Weisberg Cummings, P.C., files against the above-named Defendant, Priority Healthcare Group LLC, d/b/a The Gardens at Palmyra, demands a trial by jury, and complains and alleges as follows:

### I.  PARTIES

**A. Plaintiff**

1. Plaintiff, Sonia Ortiz (hereinafter referred to as "Plaintiff"), is an adult individual residing at 530 North Railroad Street, Palmyra, Lebanon County, Pennsylvania.

**B.** **Defendant**

2. Defendant, Priority Healthcare Group LLC, d/b/a The Gardens at Palmyra (hereinafter referred to as "Defendant"), is a Delaware corporation and a provider of home health nursing, rehabilitation, and personal care services, headquartered at 99 West Hawthorne Avenue, Suite 508, Valley Stream, Nassau County, New York.

3. At all times relevant and material hereto, Defendant owned and operated The Gardens at Palmyra (hereinafter referred to as "the Gardens") located at 341 North Railroad Street, Palmyra, Lebanon County, Pennsylvania.

## II.    JURISDICTION AND VENUE

4. The jurisdiction of the District Court is conferred by 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**5.** Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## III.    STATEMENT OF FACTS

6. At the time of the incidents described in this Complaint, Plaintiff was employed by Defendant as a Cook at the Gardens.

7. When Plaintiff began her employment, multiple health violations were apparent in the Gardens' kitchen, and Plaintiff immediately began working to correct the same.

8. Plaintiff duly notified her supervisor, Edward Harding, Defendant's Administrator at the Gardens, of these violations; however, Plaintiff's complaints were ignored and the underlying issues were left uncorrected.

9. On or about March 22, 2018, Plaintiff notified Ilan Richland, Defendant's Regional Director of Operations, of her concerns about Defendant's non-compliance with Pennsylvania's healthcare regulations, specifically the requirements of the Pennsylvania Long Term Care Licensure Regulations and the Pennsylvania Food Code, Title 7 PA Code, Chapter 46 (adopting the Model Food Code as promulgated by the United States Food and Drug Administration).  7 Pa. Code § 46.4.

10. Notably, Plaintiff reported:

   a. that the kitchen was not being cleaned, with pots and drip trays left in unsanitary condition, in violation of Food Code ¶ 4-601.11 *et seq.*, and 4-701.10 *et seq.*;

   b. that undated food was being kept in the refrigerator, in violation of Food Code ¶ 3.701.11;

    c. that delivered foods had been left outside for at least nine (9) hours before being properly stored in the freezer, in violation of Food Code ¶ 3-202.11;

    d. that the freezer was not being kept clean, in violation of Food Code ¶ 3-305.11; and

    e. that the food storage area was not being kept clean, in violation of Food Code ¶ 3-305.1.

All of which is in violation of 28 Pa. Code 201.18(b)(1) and (3), 207.2(a), and 42 CFR 483.60(i)(1) and (2).

11. As a result of the above violations, both Plaintiff and Defendant's Dietician, Steffanie (last name unknown), were regularly required to dispose of food that had been improperly stored, causing substantial waste.

12. In addition to the above, the Gardens maintained a freezer in the basement, which was defective and frequently entered "defrost mode" automatically, causing the stored food inside to thaw, in violation of Food Code ¶¶ 3-501.11, 3-501.12, and 3-501.13.

13. Upon recognizing the freezer error, staff at the Gardens would reset the freezer and refreeze the stored food.

14. In or around the end of March 2018, the stored food inside the freezer had spoiled subsequent to a defrost error and all the contents of the freezer had to be discarded.

15. Defendant is a recipient of Medicare, Medicaid, and other sources of public funding for the provision of medical services, including meeting the nutritional and dietary needs of its residents.

16. Defendant uses the funding it receives from Medicare, Medicaid, and other sources of public funding to purchase food and dietary items for its residents at the Gardens, including the food wasted as described herein.

17. In addition to the above waste, as a regular course of business, Defendant wasted food items prior to each site visit by the Pennsylvania Department of Health and Human Services ("DHHS").

18. When DHHS representatives would enter the Gardens through the front door, Defendant's receptionist would page the kitchen to notify the staff of the impending inspection.

19. Defendant's kitchen staff was then required to examine all food storage areas and dispose of any items that had been improperly or questionably marked and/or stored, regardless of spoilage.

20. On at least one occasion in the beginning of April 2018, Plaintiff witnessed two (2) thirty (30) gallon trash bags of dairy products and meat be discarded in anticipation of a DHHS site visit.

21. Upon information and belief, had Defendant been properly complying with the relevant healthcare regulations concerning food handling and storage, there would have been no need to waste the food product that was being regularly discarded.

22. Additionally, Plaintiff reported that the above-violations posed a serious threat to the safety and well-being of the Garden's residents by creating the potential that foodborne illness

23. Furthermore, Plaintiff notified Mr. Richland that, in addition to the above violations, other violations were occurring as a result of Defendant's policies and/or accepted practices that were posing a serious health risk to the Garden's long-term care residents.

24. Notably, Plaintiff reported that:

   a. the freezer log used to track food freshness was not being used in a timely manner by the staff;

   b. to coverup the fact that the freezer log was not being used in a timely manner, freezer temperatures were deceptively backfilled in

the freezer log and/or the End of Tour Cook Sheet to improperly give the appearance of extended food freshness; and

c. food, freezer, and refrigerator temperatures were being fabricated in the log books to hide the fact that the freezer had fallen below the required coolness level; and

d. Defendant's overall food storage policies, as referenced above, were causing food to spoil, thus creating the risk that spoiled food might be served to residents.

25. In fact, on more than one occasion, Mr. Harding instructed Plaintiff to prepare and serve spoiled food, in violation of 42 CFR 483.60(i)(2).

26. Pennsylvania law requires that menus be planned at least two (2) weeks in advance and that a record be kept of the food actually served.  28 Pa. Code 211.6(a).

27. In order to ostensibly comply with this requirement, Defendant maintained a Substitution Log for use when substitute meals would be prepared in place of the planned meal.

28. Upon information and belief, Mr. Harding hoped to avoid filling out the Substitution Log by serving spoiled food, since frequent use of substitutions would flag the interest of the DHHS inspectors.

29.     Each time Mr. Harding instructed Plaintiff to serve spoiled food, Plaintiff refused and prepared a different meal using non-spoiled stock.

30.     Upon information and belief, as a result of the above practices and/or procedures, the Gardens' long-term care residents were regularly served food that had not been prepared in accordance with professional standards for food service safety, in violation of 28 Pa. Code 201.18(b)(1) and (3), 207.2(a), and 211.6 and 42 CFR 483.60(i)(1) and (2).

31.     Plaintiff also informed Mr. Richland that the night snack cart was not being utilized properly, with residents being given marshmallows in place of an appropriate snack, in violation of 28 Pa. Code 211.6(b) and 42 CFR 483.60(f)(3).

32.     Plaintiff informed Mr. Richland that she would not comply with Defendant's policies and/or procedures that violated Pennsylvania law and put the health and welfare of the Garden's long-term care residents at risk.

33.     Plaintiff notified Mr. Richland that each of these concerns had been raised to Mr. Harding and that no corrective action had been taken.

34.     Plaintiff continued to complain of the non-compliance with Pennsylvania's healthcare regulations to Mr. Harding, Mr. Richland, and to Defendant's Dietician, throughout her tenure with Defendant.

35. Sometime in mid-April 2018, the Gardens ran out of sanitizer for the dishwasher. Plaintiff duly notified Mr. Harding that she would not be able to sanitize the dishes and would have to serve dinner on paper plates.

36. Plaintiff frequently notified Mr. Harding, Steffanie, and Mr. Richland that temperatures were being forged on freezer, the dishwasher, and the sanitizer logs.

37. Plaintiff's complaints were repeatedly ignored and no corrective action was ever taken.

38. On or about April 17, 2018, Plaintiff contacted the DHHS and lodged a complaint of the above health violations occurring at the Gardens.

39. Plaintiff further notified DHHS of Defendant's standard practice of warning the kitchen staff of a DHHS visit so that the kitchen staff could dispose of any food items that had been improperly stored.

40. On or about April 24, 2018, DHHS performed an on-site investigation and concluded that the Gardens was not in compliance with the Requirements for Long Term Care Facilities, 42 C.F.R. 483, Subpart B, and the Pennsylvania Long Term Care Licensure Regulations, 28 PA Code, Part IV, Subpart C.

41. Specifically, DHHS determined that the Gardens failed to maintain sanitary conditions and store food properly in the kitchen.

42. As a result of the DHHS inspection, Defendant had to discard myriad food items that had been improperly stored and/or marked.

43. On or about April 24, 2018, after DHHS had completed its on-site investigation, Mr. Harding entered the kitchen and told Plaintiff that he knew that she was responsible for the complaint to DHHS because she had "given too much detail" and that DHHS was responding to the same complaints that she had been reporting to Mr. Harding and Mr. Richland.

44. On or about April 25, 2018, Mr. Harding gave Plaintiff a written warning for failing to complete her Cook Tour Sheet by the end of her shift.

45. Plaintiff did not initial her Cook Tour Sheet because she believed that it contained inaccurate, potentially falsified information, and she duly notified Mr. Harding of the same.

46. Additionally, in the presence of Mr. Harding, Plaintiff confronted the Dietary Aide who, upon information and belief, had fabricated the freezer temperatures, yet no follow-up or correct action was taken.

47. Mr. Harding instructed Plaintiff to sign off on the Cook Tour Sheet despite her complaints that it contained falsified information; when Plaintiff still refused, Mr. Harding accused Plaintiff of insubordination and threatened to discipline her for the same.

48. Upon receiving the written warning for failing to complete her Cook Tour Sheet, Plaintiff notified Mr. Richland of the warning and the reason(s) why she had not completed the Cook Tour Sheet.

49. The written warning was clearly a pretext because on or about April 1, 2018, Plaintiff notified Mr. Harding of the previous cook's falsification of his Cook Tour Sheet, yet that cook was not disciplined.

50. Additionally, upon information and belief, on or about April 28 and again on April 29, 2018, another cook employed by Defendant failed to fill out his Cook Tour Sheets, yet this cook was neither disciplined nor given a written warning. Instead, the cook was instructed to complete the sheets later, during his next shift.

51. Furthermore, Plaintiff was not trained as to how to properly complete the Cook Tour Sheet until April 29, 2018.

52. Upon information and belief, according to Defendant's employee handbook and policies, the failure to properly complete the Cook Tour Sheet should have resulted in a verbal warning.

53. Plaintiff further notified Mr. Richland that she believed Mr. Harding was targeting her in retaliation for the complaint to DHHS.

54. On or about April 29, 2018, Mr. Harding called Plaintiff into his office and repeatedly told her that he knew that she had called DHHS.

55. Mr. Harding repeatedly threatened Plaintiff that her continued complaints could result in the Gardens being shut down and everyone losing their jobs.

56. On or about April 30, 2018, Mr. Harding terminated Ms. Ortiz, informing her that "it wasn't working out."

57. Plaintiff believes and therefore avers that Defendant terminated her in retaliation for the complaints she had made to Defendant, the complaint she filed with the Pennsylvania Department of Health and Human Services, and for her unwillingness to violate Pennsylvania law.

## COUNT I

**VIOLATION OF PENNSYLVANIA WHISTLEBLOWER LAW**
**Retaliation and Wrongful Termination**

58. All prior paragraphs are incorporated herein as if set forth fully below.

59. The Pennsylvania Whistleblower Law ("Whistleblower Law"), 43 Pa. Stat. Ann. § 1421 *et seq.*, defines "Employer" as: "any of the following which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body: (1) An individual; (2) A partnership; (3) An association; (4) A corporation for profit; (5) A corporation not for profit." 43 Pa. Stat. Ann. § 1422.

60. Defendant is a recipient of Medicare and Medicaid and potentially other sources of public funding for the provision of medical services and is

therefore an "Employer" as that term is defined pursuant to Whistleblower Law in that Defendant receives money from a public body. 43 Pa. Stat. Ann. § 1422.

61. Defendant was the employer of Plaintiff and is subject to the provisions of the Whistleblower Law.

62. The Whistleblower Law states the following in relevant part:

§ 1423. Protection of employees

(a) Persons not to be discharged. - No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally, or in writing, to the employer or appropriate authority . . . an instance of waste by any other employer as defined in this act.

43 Pa. Stat. Ann. § 1423.

§ 1425. Enforcement

A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies, A court shall also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the claimant prevails in the civil action.

43 Pa. Stat. Ann. § 1425.

63. Plaintiff made good faith reports of waste to multiple representatives of Defendant to whom it was appropriate and reasonable to make such reports, and

Defendant at all times understood and was advised that the waste was taking place at the Gardens.

64. Because Defendant purchased its food using funds received from Medicare, Medicaid, and other sources of public funding, the discarding and/or allowing of said food to spoil, as described herein above, constitutes the waste of public funding.

65. Plaintiff made a good faith report to DHHS of waste by Defendant.

66. All of the reports by Plaintiff were made in good faith and without malice or personal benefit.

67. Defendant violated Plaintiff's rights under the Whistleblower Law by terminating Plaintiff in retaliation for making a good faith complaint of a waste.

68. As a result of Plaintiff's termination, she has suffered emotional harm, embarrassment, humiliation, mental anguish, and loss of self-esteem, as well as economic loss and damage to her reputation.

**WHEREFORE**, Plaintiff Sonia Ortiz seeks the damages set forth in the *Ad Damnum* clause of the instant Complaint, infra.

## COUNT II

### VIOLATION OF PENNSYLVANIA PUBLIC POLICY
### Wrongful Termination

69. All prior paragraphs are incorporated herein as if set forth fully below.

70. In the alternative to Plaintiff's Count of Retaliation and Wrongful Termination under the Pennsylvania Whistleblower Law, Plaintiff brings the following claim of Wrongful Termination in violation of Pennsylvania Public Policy.

71. It is a public policy of the Commonwealth of Pennsylvania in the protection of public health, safety, and welfare to ensure that long-term care residents receive sufficient food to meet their nutritional needs, prepared in a safe and sanitary manner in compliance with Pennsylvania law.

72. Plaintiff was unlawfully discharged by Defendant because she refused to comply with the standard practices and/or policies of Defendant, which practices violated Pennsylvania law, as complained of above.

73. "[A] discharge may violate a 'clear mandate of public policy' if it results from conduct on the part of the employee that is required by law or from the employee's refusal to engage in conduct prohibited by law. 'The public policy exception has been most frequently applied under Pennsylvania law when the discharge is a result of the employee's compliance with or refusal to violate the law.'" *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1344 (3d Cir. 1990).

74. Defendant's discharge of Plaintiff for her refusal to engage in conduct prohibited by law and required under the law offends clear mandates of public policy in the Commonwealth of Pennsylvania and supports a tort claim for

wrongful discharge. *Herskowitz v. Cty. of Lebanon*, No. 1:13-CV-00431, 2013 WL 5719250, at *8 (M.D. Pa. Oct. 21, 2013).

75. The typical case involving wrongful discharge in violation of public policy is one where the "employee's termination is retaliatory and not grounded on a legitimate reason." *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006).

76. As a licensed health care provider, Defendant is aware of its responsibility to the public that its Pennsylvania facilities, including the Gardens, operate in compliance with Pennsylvania healthcare regulations, and therefore Defendant's termination of Plaintiff for refusing to violate these regulations constitutes a reckless disregard for the public welfare and the patients in its care.

77. As a result of Plaintiff's termination, she has suffered emotional harm, embarrassment, humiliation, mental anguish, and loss of self-esteem, as well as economic loss and damage to her reputation.

**WHEREFORE**, Plaintiff Sonia Ortiz seeks the damages set forth in the *Ad Damnum* clause of the instant Complaint, infra.

## *AD DAMNUM* CLAUSE/PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Sonia Ortiz, respectfully prays that this Honorable Court enter judgment against Defendant, Priority Healthcare Group LLC, d/b/a The Gardens at Palmyra, for the following relief;

a. Loss of wages and benefits;

b. The value of future lost wages and benefits;

c. Damages pursuant to 43 PS § 1428;

d. Damage to her reputation;

e. Other actual damages sustained by Plaintiff as a result of the wrongful conduct of Defendant;

f. Compensatory damages;

g. Damages for emotional pain, suffering, inconvenience as appropriate;

h. Injunctive and prospective relief;

i. Punitive damages as appropriate;

j. Interest on all of the above;

k. Attorney fees and expenses as appropriate;

l. Costs of suit; and

m. Such further and additional relief as this court deems just and proper.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff, Sonia Ortiz, respectfully demands a trial by jury.

Respectfully submitted,

Weisberg Cummings, P.C.

<u>August 5, 2019</u>　　　　　*/s/ Steve T. Mahan*
Date　　　　　　　　　　　Steve T. Mahan, Esquire
　　　　　　　　　　　　　PA Bar No. 313550
　　　　　　　　　　　　　smahan@weisbergcummings.com

　　　　　　　　　　　　　Derrek W. Cummings, Esquire
　　　　　　　　　　　　　PA Bar No. 83286
　　　　　　　　　　　　　dcummings@ weisbergcummings.com

　　　　　　　　　　　　　Larry A. Weisberg, Esquire
　　　　　　　　　　　　　PA Bar No. 83410
　　　　　　　　　　　　　lweisberg@ weisbergcummings.com

　　　　　　　　　　　　　Stephen P. Gunther, Esquire
　　　　　　　　　　　　　PA Bar No. 324203
　　　　　　　　　　　　　sgunther@ weisbergcummings.com

　　　　　　　　　　　　　2704 Commerce Drive, Suite B
　　　　　　　　　　　　　Harrisburg, PA 17110-9380
　　　　　　　　　　　　　(717) 238-5707
　　　　　　　　　　　　　(717) 233-8133 (FAX)

　　　　　　　　　　　　　*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Steve T. Mahan, hereby certify that the foregoing Second Amended Complaint has been filed electronically and is available for viewing and downloading through the Court's Electronic Case Filing (ECF) System. Upon the electronic filing of a pleading or other document, the Court's ECF System will automatically generate and send a Notice of Electronic Filing to all Filing Users associated with that case. Transmission of the Notice of Electronic Filing constitutes service of the filed document pursuant to Standing Order No. 05-6, ¶12.2.1.

                                                Respectfully submitted,

                                                Weisberg Cummings, P.C.

<u>August 5, 2019</u>                          <u>/s/ Steve T. Mahan</u>
Date                                         Steve T. Mahan, Esq.
                                                2704 Commerce Drive
                                                Harrisburg, PA 17110
                                                (717) 238-5707
                                                (717) 233-8133 (FAX)

                                                *Attorneys for Plaintiff*